IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KELLY ARMSTRONG,

                Plaintiff,                OPINION AND ORDER

v.

                                            22-cv-329-wmc

BROWNS LIVING, LLC.

                Defendants.

---

    Plaintiff Kelly Armstrong contends that her former employer, defendant Browns Living, LLC, fired her because she is white, in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981, and because she asked for an accommodation for her anxiety, in violation of the Americans with Disabilities Act. Browns Living moves for summary judgment, contending that Armstrong's claims are (1) barred by a separation agreement she signed after her termination, and (2) without evidentiary support. Because the court concludes that Armstrong released all of these claims in her separation agreement, and she has no basis for rescinding that agreement, the court will grant summary judgment.

UNDISPUTED FACTS[1]

    In January 2020, plaintiff Armstrong began working as a director for the Milwaukee region of defendant Browns Living, LLC, a management company for assisted living facilities. Armstrong was responsible for managing six assisted living facilities in the Milwaukee area, hiring and supervising care managers for each of those facilities, and

---

[1] The following facts drawn from the parties' proposed findings of fact and responses and are undisputed unless otherwise noted.

traveling to these facilities on a routine basis. Armstrong reported directly to Kelli Smith, Browns Living's Director of Operations.

Armstrong experienced high levels of anxiety during her employment at Browns Living, particularly when feeling she had insufficient time to prepare for meetings and other interactions.  In March 2020, Armstrong told Smith that her anxiety was affecting her work performance, and she asked Smith if her performance evaluations could be given to her in writing so that she could digest the information before speaking to Smith about it. Smith responded that she had no concerns about Armstrong's performance, so she saw no need to discuss Armstrong's request.  According to Armstrong, Smith's attitude toward her seemed to worsen after she requested advance performance feedback in writing, and on numerous occasions, Smith suggested that staff in the Milwaukee region's assisted living facilities would respond better to a black supervisor.

Meanwhile, there was high staff turnover at the facilities that Armstrong was overseeing.  Specifically, during her 12 weeks of employment from January 2 to April 1, 2020, 11 employees in the Milwaukee region quit, five of whom reported to Stephanie Armstrong, the company's Human Resources Director (no relation to plaintiff), that plaintiff's management or behavior was a reason for their leaving.  (Plaintiff points to other reasons why some of the employees left, but her evidence does not raise a genuine dispute regarding what those employees said to human resources was the basis for their leaving.)

On March 28, 2020, Stephanie Armstrong, Kelli Smith, and David Thewes, the company's Vice President of Business Development for defendant, met to discuss plaintiff's work performance and the turnover in the Milwaukee region.  During that meeting, they

discussed concerns about the lack of leadership in the assisted living facilities in the Milwaukee area, and more specifically, and plaintiff Armstrong's ability to manage people as a Regional Director. After the meeting, Stephanie Armstrong made the decision to terminate plaintiff's employment, and on April 1, 2020, she notified plaintiff of her termination.

Browns Living then presented plaintiff Armstrong with a "Separation Agreement, Waiver and General Release," and advised her to consult with an attorney in connection with executing the Separation Agreement. The parties signed the Separation Agreement on April 2, 2020.

Under the agreement, Browns Living paid Armstrong approximately $10,000, "in exchange for" Armstrong waiving and releasing her right to assert any claims against Browns Living arising from her employment with or separation from Browns Living, including claims under Title VII, the ADA, or any other statutory framework. (Dkt. #9-3, at 5, ¶ 2) (" In exchange for the payment and benefits, Employee agrees [to] waive[] and release[] any and all claims, actions, and causes of action which Employee has or may have against the Company. . . .")

The Separation Agreement also provided:

> Employee also agrees that she will direct all reference checks and communications to Stephanie Armstrong. Employee further agrees to communicate to Company executives, Case teams, MCO's, employees and third parties only that she ended her employment with Company to pursue other opportunities and to not disparage or otherwise attempt to discredit company. Company likewise agrees not to disparage or otherwise attempt to discredit Employee with above mentioned individuals. Company agrees to communicate to its

> executives and relevant individuals only that Employee has ended her employment to pursue other opportunities.

(Dkt. #9-3, at 5, ¶ 11.) Several months after her termination, Armstrong had failed to obtain new employment and began to suspect that Browns Living might be giving negative references about her to potential employers. At this point, Armstrong is unaware of any actual negative references being given to any actual potential employer.

In August 2020, plaintiff Armstrong hired a company called Check My References to pose as a prospective employer to contact Browns Living and obtain a reference.

On September 18, 2020, Check My Reference emailed Armstrong as follows:

Hi Kelly,

> I was finally able to connect with Britt in HR (That is who Stephanie referred me to), see attached. Her tone of voice was very professional and pleasant when speaking to me. She provided your title of Regional Director and your dates of 12/20/19-4/1/2020. She said that you were terminated because it wasn't working out in the position. She also said that you are eligible for rehire with the company, but just not that position.
>
> Based on the information obtained, in my opinion, this may be perceived as a negative reference and may hinder you in your job search.

Best regards,

Debbie

Attached to that email was a form report on the Browns Living reference, which conveyed the same information. (Dkt. #15-1 and Dkt. #15-2.)

On November 17, 2020, Armstrong emailed Browns Living, stating that because it had violated the Separation Agreement, she considered the agreement "terminated" and

4

"null and void." Browns Living then conducted an internal investigation and was unable to identify anyone within Browns Living that had provided any negative statements about Armstrong to anyone, let alone a potential employer. Browns Living responded to Armstrong that it had conducted an investigation and could not substantiate her allegation, and that the Separation Agreement remained valid and binding.

Armstrong subsequently filed a discrimination claim with the EEOC, raising claims under Title VII of the Civil Rights Act and the ADA. On March 28, 2022, the EEOC issued a right to sue letter, after which Armstrong filed this lawsuit.

OPINION

Defendant moves for summary judgment on the grounds that: (1) plaintiff's claims are barred by the release contained in the Separation Agreement; and (2) even if they were not barred, she cannot prove that she was terminated because of her race or disability. Instead, defendant argues, plaintiff was terminated because of poor performance, the unusually high turnover rate in her region, and the fact that several employees cited plaintiff and her management style as the reason they left employment at Browns Living. Because the court concludes that the Separation Agreement is dispositive, it addresses only the first argument.

Plaintiff concedes that she released all her potential employment-related claims against defendant when she signed the Settlement Agreement and defendant paid her a sum of money. However, she argues that she is no longer bound by the release because defendant breached the agreement by providing a negative employment reference. Defendant responds that plaintiff's efforts to void the agreement fail because: (1) she has

not proved that defendant committed a "material breach" of the agreement; and (2) she never returned to defendant the money she received under the agreement, as required under Seventh Circuit case law, *Fleming v. U.S. Postal Service AMF O'Hare*, 27 F.3d 259, 260 (7th Cir. 1994).

Turning first to the question of "material breach" under Wisconsin law, a party to a contract must perform in accordance with the contract terms unless the other party commits a material breach of the contract. *Ranes v. American Fam. Mut. Ins. Co.*, 219 Wis. 2d 49, 57, 580 N.W.2d 197 (1998).[2] A breach is material only if it is so serious and substantial as to destroy the essential objects of the agreement. *Id.* at 57; *see also Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996). However, the law recognizes that not every instance of noncompliance with a contract's terms constitutes a breach, and not every breach justifies treating the contract as terminated. If a breach is "relatively minor" and not "of the essence," the nonbreaching party is not excused from performance. *Management Comp. Serv.*, 206 Wis. 2d at 183, 557 N.W.2d 67. Whether a breach is "minor" or "material" involves the consideration of several factors, including: the extent to which the injured party will be deprived of the benefit that she reasonably expected; the likelihood that the party failing to perform will cure its failure; the extent to which the injured party can be adequately compensated for her loss; and the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. *Id.* at 184 (citations omitted).

---

[2] The Separation Agreement is governed by Wisconsin law. (Dkt. #30-6, ¶ 9.)

Here, plaintiff argues that defendant committed a material breach of the Separation Agreement by providing a negative reference to the Check My References employee. She insists that the reference provision was an essential object of the agreement because she was particularly concerned when she left that defendant would provide negative references to potential future employers. However, even assuming that the reference provision was an essential object of the agreement, plaintiff has failed to show that defendant materially breached that provision.

First, plaintiff's argument relies entirely on inadmissible hearsay. After months of discovery, the only evidence that plaintiff submitted to prove that defendant gave a negative reference is the email and form provided by a Check My References employee. But the email is hearsay because it is an out-of-court statement being offered for the truth of the matter asserted—that an employee named "Brit" in fact made those statements about plaintiff to an employee named "Debbie." Plaintiff provides no sworn declaration from anyone with personal knowledge describing the alleged conversation. As such, the email is hearsay and inadmissible at summary judgment. Fed. R. Civ. P. 56(c)(2); *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (inadmissible hearsay evidence may not be considered on summary judgment); *see also Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 942 (7th Cir. 2012) (email stating that defendant had made disparaging statements about plaintiff was inadmissible hearsay); *Servin v. City of Chicago*, 796 F. App'x 307, 309 (7th Cir. 2020) (investigator's out-of-court statement (reporting another person's statement) to establish the truth of that factual assertion" is inadmissible hearsay).

Second, even if plaintiff had submitted admissible evidence showing that defendant provided a negative reference to a reference-checking company, that "breach" was not "so serious" as to "destroy" the essential purpose of the contract. Plaintiff concedes that she has no evidence that defendant provided a negative reference to an actual, potential employer. She never even followed up with any prospective employer to determine if it had reached out to defendant for a recommendation or asked defendant to correct any arguable breach in how its employee had allegedly responded to a fake inquiry, much less returned the $10,000 given to release her claims now asserted in federal court. Instead, she merely speculates that defendant might have provided a negative reference to a potential employer, in light of the reference it provided to Check My References and her failure to obtain a new job. But speculation and conjecture are not sufficient to raise a genuine factual dispute at the summary judgment stage. *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019); *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017). Because plaintiff offers no contrary evidence, the undisputed evidence supports defendant's assertion that it conducted an internal investigation that revealed no evidence of a negative reference being provided to any potential employer.

Plaintiff also argues that whether defendant's statement to Check My References amounted to a material breach is a question of fact that should be left for the jury. However, she identifies *no* genuine factual disputes that remain unresolved, and based on the record before the court, no reasonable jury could conclude that defendant's alleged negative reference amounted to a material breach of the Separation Agreement. Rather, the only reasonable conclusion is that the alleged breach was relatively minimal: plaintiff

suffered no injury or damages from the alleged breach, and her future job prospects were not prejudiced. *See Ranes*, 219 Wis. 2d at 58 (breach not material where insurance company was not prejudiced).

In sum, plaintiff has failed to identify or prove any breach of the Separation Agreement that would warrant rescission under Wisconsin law, so all her current claims are barred by the Separation Agreement. Accordingly, defendant is entitled to summary judgment.[3]

ORDER

IT IS ORDERED that defendant Browns Living, LLC's motion for summary judgment (dkt. #27) is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered September 15, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[3] The court need not address defendant's remaining arguments regarding plaintiff's failure to tender the money she received back to defendant or its arguments on the merits of her discrimination claims.